# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

      Plaintiff,

  v.                                                                  1:22-cr-01401-KWR-1

KENNETH EVANS,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Suppress Evidence (Doc. 33). The Court held an evidentiary hearing on November 1, 2023. Having reviewed the pleadings and heard oral argument and testimony at the hearing, the Court finds that Defendant's motion is not well taken, and therefore, is **DENIED**.

## BACKGROUND[1]

On August 21, 2021, Officer Oswaldo Cisneros initiated a traffic stop of Defendant Kenneth Evans driving an orange Kawasaki motorcycle for failure to display a license plate. Defendant sped off and evaded the traffic stop. Within half an hour, Officer Cisneros spotted Defendant and his motorcycle parked at a Circle K gas station at 8601 Wyoming Blvd NE in Albuquerque, roughly a mile away from the initial encounter. Officer Cisneros radioed for police backup and initiated a stop for both evading the initial traffic stop and failure to display a license plate. Officer Cisneros recognized Defendant from previous arrests and encounters. In the days prior to the August 21, 2021, traffic stop, Albuquerque Police and Officer Cisneros had been monitoring a nearby abandoned apartment building in a high crime

---

[1] The Court is not making factual findings related to Defendant's conduct on the underlying charge in this Memorandum Opinion and Order.

neighborhood and saw Defendant's motorcycle without a license plate. Officer Cisneros also encountered Defendant on his motorcycle parked outside of a post office but did not conduct a stop due to patrol priorities.

After initiating the August 21 encounter, Officer Cisneros told Defendant the initial reason for the stop – failure to display a license plate – a traffic infraction in violation of NM Stat § 66-3-18 (2018). Officer Cisneros realized Defendant had a license plate affixed to the rear of the motorcycle but observed that the plate was hidden and illegible. Upon request, Defendant directed Officer Cisneros to the vehicle identification number ("VIN"). Officer Cisneros asked Defendant for his driver's license and registration information; Defendant responded he did not have these documents with him. Defendant then provided Officer Cisneros with a false name and his date of birth. Officer Cisneros ran the license plate and two VINs on the motorcycle, finding the plates and VINs did not match. Through Defendant's information, Officer Cisneros discovered two outstanding felony arrest warrants. Upon confirmation of the active arrest warrants, Officer Cisneros arrested Defendant and removed his black backpack. When conducting a search incident to arrest, officers allegedly found a loaded pistol and cash on Defendant. In Defendant's backpack, officers allegedly found fifteen rounds of ammunition, 44.6 grams of methamphetamine, 3.46 grams of heroin, eighty-one fentanyl pills, and a digital scale.

Defendant faces several charges, including: (1) possession with intent to distribute 5 grams and more of methamphetamine, in violation of 21 USC §841(a)(1) and (b)(1)(B); (2) possession with intent to distribute fentanyl, in violation of 21 USC §841(a)(1) and (b)(1)(C); (3) felon in possession of a firearm and ammunition, in violation of 18 USC §922(g)(1) and 924; and (4) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 USC §924(c)(1)(A)(i). Defendant now seeks suppression of all evidence recovered from the traffic stop, arguing that Officer Cisneros illegally expanded the scope of the detention beyond what was necessary from the alleged traffic violation.

Therefore, he argues that all evidence found is fruit of the poisonous tree from an unlawful search and must be suppressed.

## DISCUSSION

### I. The Scope of Detention Was Lawful

Defendant argues that Officer Cisneros expanded the scope of the detention beyond what was necessary from the initial purpose of the stop. He believes that Officer Cisneros' subsequent inquiries, which led to Defendant's arrest and the discovery of the evidence in question, were unlawful. Doc. 33 at 5-6. The Court disagrees, and concludes that the traffic stop, detention, and subsequent search were lawful.

The Fourth Amendment protects people against unreasonable searches of "their persons, houses, papers, and effects." U.S. Const. amend. IV; *Soldal v. Cook County*, 113 S. Ct. 538, 544 (1992). The Fourth Amendment requires that police have an articulable and reasonable suspicion of criminal conduct before making an investigative stop of an automobile. *United States v. Rodriguez-Pando*, 841 F.2d 1014, 1016-17 (10th Cir. 1988), citing *United States v. Sharpe*, 470 U.S. 675, 84 L. Ed. 2d 605, 105 S. Ct. 1568 (1985).

"[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995), citing *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979). In evaluating the reasonableness of a traffic stop, a court must engage in a two-prong inquiry: (i) first, whether the stop was "justified at its inception;" and (ii) second, whether the traffic stop was "reasonably related to the circumstances which justified the interference in the first place." *United States v. Winder*, 557 F.3d

1129, 1134 (10th Cir. 2009); *United States v. Anderson*, 114 F.3d 1059, 1063 (10th Cir. 1997); *United States v. Gomez-Arzate*, 981 F.3d 832, 838 (10th Cir. 2020).

Reasonable suspicion exists if an officer has "a particularized and objective basis for suspecting the [defendant] of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quotations omitted); *United States v. Sanchez*, 519 F.3d 1208, 1213 (10th Cir. 2008)). In evaluating reasonable suspicion, courts are guided by the "totality of the circumstances." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)); *Sanchez*, 519 F.3d at 1213. In conducting an analysis of the legality of a traffic stop, the Court should "consider the reasonableness of an officer's actions using an 'objective standard' that takes the 'totality of the circumstances' and the 'information available' to the officer into account." *Sanchez*, 519 F.3d at 1213. The Court should ask whether "'the facts available' to the detaining officer, at the time, warranted an officer of 'reasonable caution' in believing 'the action taken was appropriate.'" *Id*. (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)).

An initial stop may be justified by the violation of a traffic rule, but the scope of the resulting detention must remain reasonably related to the initial justification. *Botero-Ospina*, 71 F.3d at 783; *United States v. Gonzales-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994) (holding that the officer may request documents, run a computer check, and issue a citation before releasing the detainee) (overruled on other grounds).

Traffic stops "must be temporary and last no longer than is necessary to effectuate the purposes of the stop." *United States v. Sandoval*, 29 F.3d 537, 539 (10th Cir.1994) (quoting *Florida v. Royer*, 460 U.S. at 500). The stop must also be "reasonably related in scope to the circumstances which justified the initial stop." *United States. v. Williams*, 403 F.3d 1203, 1206 (10th Cir. 2005). To constitutionally justify a detention beyond this scope and temporal limits, the Government must show that there was an

objectively reasonable and articulable suspicion of further criminal activity or that the individual voluntarily consented to the excessive detention. *Williams*, 403 F.3d at 1206; *Sandoval*, 29 F.3d at 540. For the stop to be justified based upon an "objectively reasonable and articulable suspicion" of further illegal activity, there must be "sufficient and specific articulable facts" known to the officer at the time the detention is extended or scope which support a rational inference of criminal activity. The allowable scope of an investigative detention cannot be determined by reference to a bright-line rule; rather, common sense and ordinary human experience must govern over rigid criteria. *United States v. Neff*, 300 F.3d at 1220 (quoting *Sharpe*, 470 U.S. at 685.)

During the course of a traffic stop, an officer's mission is "to address the traffic violation that warranted the stop and attend to related safety concerns." *United States v. Mayville*, 955 F.3d 825 (10th Cir. 2020) citing, *Rodriguez v. United States*, 575 U.S. 348, 354-55 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). This mission "includes ordinary inquiries incident to" a traffic stop, which typically involves inspection of a vehicle's registration, driver's license, and searches for outstanding warrants. *Id*.

Defendant contends that the facts favor a finding that Albuquerque Police and Officer Cisneros expanded the scope and duration of the detention beyond what was necessary to address the traffic violation. Doc. 33 at 5-6. Once Officer Cisneros confirmed the existence of a license plate, the purpose of the stop was complete, and the detention should have terminated without further inquiry. *Id*. The United States argues otherwise. Doc. 34 at 1.

In this case, the Court finds Officer Cisneros had a reasonable and articulable suspicion to conduct the stop based on the totality of the circumstances, and the detention lasted no longer than necessary to effectuate the purposes of the stop. In the days prior to the August 21, 2021, incident, Albuquerque Police had previously suspected Defendant's motorcycle on two occasions of not having a license plate in violation of NM Stat § 66-3-18 (2018).

Officer Cisneros first initiated the August 21, 2021, traffic stop with lights and sirens based on an observed traffic violation of operating a vehicle without a license plate. Defendant sped off and evaded police, which constitutes a second traffic violation. Evasive behavior itself is a well-established relevant factor in creating reasonable suspicion for an investigatory stop. *United States v. Neff*, 681 F.3d 1134, 1141 (10th Cir. 2012); *United States v. McHugh*, 639 F.3d 1250, 1258 (10th Cir. 2011). Upon seeing Defendant on his motorcycle within half an hour and near the first attempted stop, Officer Cisneros conducted a traffic stop. Both traffic violations formed particularized and objective bases of criminal activity. Given Defendant's behavior, from its inception, the traffic stop was justified and directly and reasonably related to the observed traffic violations. Based on the totality of the circumstances given the observed violations, Officer Cisneros had reasonable suspicion to conduct a traffic stop.

As to the scope and length of detention, the traffic stop here was reasonably related to the initial justification and lasted no longer than necessary to effectuate the purposes of the stop. When Officer Cisneros began the traffic stop, although he saw that Defendant's vehicle had a license plate, he still had an objectively reasonable and articulable suspicion that a traffic violation occurred – namely an improperly displayed, illegible license plate, in addition to evading police. Defendant's license plate was not displayed in a higher, visible location on the rear of the vehicle as is standard on motorcycles. Officer Cisneros asked Defendant for his driver's license and registration, to which Defendant responded he did not have either. Defendant concealed his identity using an alias, Kenneth Blackshear, another legal offense. NM Stat § 30-22-3 (2018). Defendant provided his date of birth and the last four digits of his Social Security number.

Officer Cisneros could not locate the VIN in part because the vehicle was spraypainted and altered – reinforcing suspicion of a possibly stolen vehicle, and he asked for Defendant's assistance. Upon running the VIN and license plate, Officer Cisneros discovered the two did not match. Through

the non-matching VIN, Defendant's evasive behavior, the observed violation of NM Stat § 66-3-18 through a failure to display a visible license plate, and concealing his identity, these created an objectively reasonable suspicion that developed and intensified through the duration of the stop. *United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir.1989); *United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir.1988); *United States v. Trimble*, 986 F.2d 394 (10th Cir.1993). Furthermore, Defendant's firearm imprint on his waist visible to Officer Cisneros further justified the investigative actions out of concerns for officer safety. *Mayville*, 955 F.3d at 825. These inquiries were reasonably related to the initial justification for the stop and permissible to address the traffic violations, the potential for a stolen vehicle, and simply out of concerns for officer safety. *Id*. Upon discovery and confirmation of two outstanding arrest warrants, Officer Cisneros arrested Defendant. Officer Cisneros was diligent and efficient in his execution of the traffic stop, lasting no longer than necessary to effectuate its purposes. Therefore, the Court finds that the traffic stop and detention were lawful.

      Following his arrest, the subsequent search of Defendant's person and backpack were lawful as a search incident to arrest. Searches of an arrestee and his immediate area, out of safety concerns, are permissible under the Fourth Amendment. *Riley v. California*, 573 U.S. 373, 374 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685; *United States v. Robinson*, 414 U.S. 218, 226 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972*); Cupp v. Murphy*, 412 U.S. 291, 295, 93 S.Ct. 2000, 2003, 36 L.Ed.2d 900 (1973). Given Officer Cisneros' reasonable suspicion and safety concerns, in addition to the active felony arrest warrants, the ensuing search of Defendant and his backpack was lawful.

      If the search of Defendant and his backpack were unlawful and the evidence found 'fruit of the poisonous tree,' suppression would still not be warranted. 'Fruit of the poisonous tree' will not be suppressed unless the unlawful search was the but-for cause of its discovery. *United States v. Chavira*,

467 F.3d 1286, 1291 (10th Cir. 2006); *Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159, 2164, 165 L.Ed.2d 56 (2006). An unlawful VIN search, as Defendant argues was the case here, is not the but-for cause of the discovered contraband. *Chavira*, 467 F.3d, at 1291-92; *Gomez-Arzate*, 981 F.3d at 840-41. The VIN search resulted in the discovery of Defendant's active felony arrest warrants, which then led to his arrest and the subsequent search incident to arrest. Even if the VIN search were unlawful as Defendant contends, the exclusionary rule would not apply owing to a lack of but-for causation.

Therefore, the Court finds that the traffic stop, detention, and subsequent search were lawful. The evidence discovered is admissible and should not be suppressed.

## II.     The Attenuation Doctrine Would Preclude Suppression of the Evidence

The United States contends that if the traffic stop, detention, and search are deemed unlawful, the attenuation doctrine exception to the Fourth Amendment applies rendering the discovered evidence admissible. Doc. 34 at 4. This Court agrees.

Under the exclusionary rule**,** when the Government obtains evidence through an unconstitutional search, the evidence is inadmissible unless an exception applies. *Mapp v. Ohio*, 367 U.S. 643, 655–58 (1961); *United States v. Knox*, 883 F.3d 1262, 1273 (10th Cir. 2018). Under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that "the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained."" *Utah v. Strieff*, 579 U.S. 232, 238 136 S. Ct. 2056, 195 L. Ed. 2d 400 (2016); *Hudson v. Michigan*, 547 U.S. 586, 593 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). "The attenuation doctrine evaluates the causal link between the government's unlawful act and the discovery of evidence, which often has nothing to do with a defendant's actions." *Strieff*, 579 U.S. at 238. "Under this doctrine, a constitutional violation leading to the discovery of evidence does not require exclusion when only an

attenuated connection exists between the constitutional violation and discovery of the evidence." *United States v. Gaines*, 918 F.3d 793, 799 (10th Cir. 2019).

To satisfy the Government's burden, the three *Brown* factors guide a court's attenuation doctrine analysis to determine whether there are "sufficient intervening acts to break the causal chain between the unlawful stop and the discovery of evidence." *Strieff*, 579 U.S. at 239, citing *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *United States v. Colbert*, No. CR 21-1221 JB, 2023 WL 5672694 (D.N.M. Sept. 1, 2023), at 55.

First, courts look to the "temporal proximity between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search." *Strieff*, 579 U.S. at 239. Generally, temporal proximity does not favor attenuation unless 'substantial time' has passed between the unlawful act and the evidence obtained. *United States v. Shrum*, 908 F.3d 1219, 1236 (10th Cir. 2018) citing, *Strieff,* 136 S.Ct. at 2062 citing, *Kaupp v. Texas*, 538 U.S. 626, 633, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003). "The longer the time lapse between the initial illegality and the acquisition of the challenged evidence…the more likely such evidence has been purged of the illegality's primary taint, i.e., has become attenuated." *Shrum*, 908 F.3d at 1236 citing, *United States v. Ceccolini*, 435 U.S. 268, 276-77, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).

Second, courts consider "the presence of intervening circumstances." *Id*. The Supreme Court has held "the existence of a valid warrant favors finding that the connection between unlawful conduct and the discovery of evidence is 'sufficiently attenuated to dissipate the taint.'" *Colbert*, No. CR 21-1221 JB, 2023 WL 5672694 at 56 citing, *Strieff*, 579 U.S. at 240 (quoting *Segura v. United States*, 468 U.S. at 815).

Lastly, and particularly significant, courts examine "the purpose and flagrancy of the official misconduct" by police. *Id*. The third factor generally favors exclusion "only when the police

9

misconduct is in need of deterrence." *Shrum*, 908 F.3d at 1219 citing, *Strieff*, 136 S.Ct. at 2063. If the Government meets this burden, the intervening act(s) sever the causal link between unconstitutional police conduct and the evidentiary search, rendering related evidence admissible.

Defendant argues the attenuation doctrine does not apply because of (1) the close temporal proximity between the detention and the search and (2) officers' repeated escalation of the encounter despite confirmation of a license plate and its validity. Doc. 35 at 2-3.

In this case, the attenuation doctrine applies if the traffic stop, detention, and search were unlawful. While the first factor, temporal proximity, weighs in favor of Defendant, the second and third factors favor the Government.

Regarding temporal proximity, Officer Cisneros found the firearm and cash on Defendant minutes after the traffic stop. Police discovered the backpack's contents shortly thereafter. Since temporal proximity does not favor attenuation unless 'substantial time' passes between an unlawful search and the evidence obtained, such a short time interval favors suppression. *Strieff,* 136 S.Ct. at 2062.

As to the presence of intervening circumstances, this factor favors the Government. Active arrest warrants that predate and are unconnected to a traffic stop are considered an intervening circumstance that independently compels arrest. *Id*.; *Arizona v. Gant*, 556 U.S. 332, 339, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Officer Cisneros' authorization to arrest Defendant was independently compelled by the preexisting arrest warrants unrelated to the stop. Therefore, this second factor weighs in favor of the Government and against suppression.

Regarding the purpose and flagrancy of the official misconduct, this factor also favors the Government. Here, Officer Cisneros' conduct was not in need of deterrence nor is there any indication he committed misconduct that was purposeful or flagrant. *Shrum*, 908 F.3d at 1219 citing, *Strieff*, 136

S.Ct. at 2063.  Officer Cisneros' decision to run a warrant check was a "negligibly burdensome precaution[n]" done for his own safety and given the factual circumstances.  *Strieff*, 136 S.Ct. at 2063 citing, *Rodriguez* 135 S.Ct. at 1616.  The actions taken by Albuquerque Police were reasonable, diligent, and efficient in addressing Defendant's actions and officers' reasonable suspicion.  Nor has Defendant established that this stop was part of recurrent or systemic police misconduct.  *Id*.

As such, in line with Tenth Circuit precedent following *Strieff*, despite temporal proximity favoring suppression, Defendant's outstanding arrest warrants acted as a "critical intervening circumstance" breaking the causal chain between the stop and the discovery of evidence.  *Id*.  Albuquerque Police did commit misconduct in need of deterrence and therefore, the attenuation doctrine would apply if this stop were unlawful.

## CONCLUSION

The Court finds the traffic stop and detention were rooted in an objective, articulable, reasonable suspicion and lasted no longer than necessary to effectuate the purposes of the stop in weighing the totality of the circumstances.  The subsequent arrest and search were lawful.  Even if officers lacked reasonable suspicion and the detention was longer than necessary and exceeded the purposes of the initial stop, the attenuation doctrine exception would apply.  Therefore, the evidence discovered is admissible and should not be suppressed.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress (Doc. 33) is **DENIED**.

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE